IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Loria H. Thomas, | ) | C/A No. 3:11-32-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | **AMENDED** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| UCI Medical Affiliates, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    The plaintiff, Loria H. Thomas ("Thomas"), filed this employment discrimination action against her former employer, UCI Medical Affiliates, Inc. ("UCI"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment. (ECF No. 69.) Thomas filed a response in opposition (ECF No. 75) and the defendant filed a reply (ECF No. 79). Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's motion should be granted.

## BACKGROUND

    The following facts are either undisputed or are viewed in the light most favorable to Thomas, to the extent they find support in the record. This matter arises out of Thomas's employment with UCI from December 2007 through August 2009. The crux of Thomas's claims is that she was terminated after she took leave to attend medical appointments because she was experiencing back pain.

PJG

Thomas suffers from scoliosis, which was in remission during the relevant time period until she began experiencing back pain again in June of 2009. Thomas explained to her supervisor, Sharon Jones, about her history of scoliosis and back pain and inquired of Jones about a back specialist referral. At the end of July, Thomas left work early to see a doctor because of her back pain. Jones was out on leave that day, so Thomas obtained permission from another supervisor to leave work to see a physician; Thomas also sent an e-mail to Jones explaining why she was leaving early. Before Thomas left to attend the appointment, Jones arrived at the office and complained that she "knew this was going to happen." Jones then sent an e-mail requiring a doctor's excuse from anyone who called in sick while Jones was out, noting that there had been a pattern of employees leaving early or calling in sick on days when Jones was out of the office.

When Thomas returned to work the following Monday, she asked Jones to have two male employees move some storage boxes for her, but Jones ignored her request. According to Thomas, Jones seemed disgusted or annoyed at Thomas's request. Thomas then herself solicited and obtained help to move the boxes. At some point following Thomas's doctor's appointment at the end of July, Thomas informed Jones that she was scheduled for a follow-up appointment three weeks later and that further medical appointments seemed likely. Prior to her follow-up appointment in August, Thomas requested a full day's leave. She also inquired about FMLA leave for future tests and appointments. Jones rebuffed her and essentially refused to discuss FMLA leave with Thomas.

According to Thomas, while she was out for her medical appointment on August 21, Jones searched Thomas's desk and discovered a stack of "stale" mail that had not been timely processed. Thomas further asserts that when she returned to work the following Monday, Jones's manner to her

was "cold." On Friday of the same week, Thomas was terminated for the stated reason that she had stale, dated mail on her desk that had not been researched.

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002).  The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  The court must determine



whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Burden Shifting Framework**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII); see also Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 550-51 (4th Cir. 2006) (applying the McDonnell Douglas burden-shifting framework to FMLA claims of retaliation). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that



the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.     Thomas's Claims**

Thomas appears to have abandoned her ADA claims based on a failure to accommodate her disability and retaliation. Thus, remaining before the court are Thomas's claims that she was disparately treated due to a disability and that she was retaliated against for attempting to assert her FMLA rights. The defendant is entitled to summary judgment as to both of these claims because, even assuming without deciding that Thomas could establish a *prima facie* case for these claims, the evidence of record does not permit a reasonable inference that the defendant's stated reason for terminating Thomas was pretextual.

In support of her assertion that UCI's stated reason for Thomas's termination was pretextual, Thomas disputes that the mail at issue was stale due to any negligence on her part. She suggests, rather, that the old mail was placed on her desk, if at all, during her absence by someone in a different department. However, even accepting Thomas's theories regarding the stale mail as true, nothing in the record tends to show that Thomas's supervisors did not believe that Thomas was at fault. The law recognizes that an employer need not be correct regarding its assessment of the plaintiff's work performance, as long as the assessment is genuinely believed. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decision maker which is relevant' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)); Tate v. Dravo Corp., 623 F. Supp. 1090, 1105 (W.D.N.C. 1985) ("The factfinder need not judge the correctness of the employer's assessment of the employee's abilities; it need only determine that the employer in good faith believed that the

employee's performance was unsatisfactory and that the asserted reason for the decision was not a mere pretext for discrimination."). Although Thomas argues that UCI did not wait for her explanation regarding the stale mail before deciding to fire her and that its mistake in attributing it to her could have been avoided if UCI used a date-stamp procedure to track mail through various departments, this is insufficient to show that UCI did not believe her to be at fault. Rather, courts have generally recognized that an employer's unfair deviation from its own termination procedures or its failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext. See, e.g., Duggan v. Sisters of Charity Providence Hospitals, 663 F. Supp. 2d 456, 470 n.6 (D.S.C. 2009) (rejecting plaintiff's attempt to establish pretext by pointing out that the defendant rushed to judgment to terminate him, failed to interview witnesses or the plaintiff himself, failed to follow its own policy, and failed to consult with the plaintiff's supervisor before deciding to terminate him); see also Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."); Babbar v. Ebadi, 36 F. Supp. 2d 1269, 1279 (D. Kan.1998) (stating that evidence that the employer deviated from procedures during the adverse employment action "goes only to process and not to purpose or motivation, and could not provide a sufficient basis for a jury to find pretext for discrimination") (internal quotations omitted); Jacobs v. Delta Air Lines, Inc., 1998 WL 514620, at *3 (10th Cir. Aug. 13, 1998) (stating that plaintiff's assertion of poor investigation "challenges the process applied rather than [the employer's] purpose or motivation" and cannot support an inference of pretext); Dotson v. Avon Prods., Inc., 2012 WL 3549768, at * 4 (D.S.C. Aug. 16, 2012)

(stating that evidence of defendant's mistakes of fact in terminating plaintiff were insufficient to establish pretext for disability discrimination).

## RECOMMENDATION

Because the evidence in the record does not permit a reasonable inference that UCI's stated reason for terminating Thomas was a pretext for discrimination or retaliation, the court recommends that the defendant's motion for summary judgment (ECF No. 69) be granted.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

June 7, 2013
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).