IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Loria H. Thomas, ) | C/A NO. 3:11-32-CMC-PJG |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| UCI Medical Affiliates, Inc., ) | |
| Defendant. ) | |

Plaintiff Loria H. Thomas ("Thomas") filed this action against her former employer, UCI Medical Affiliates, Inc. ("UCI"), alleging employment discrimination. Plaintiff's complaint states claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA").

On October 2, 2012, UCI filed a motion for summary judgment. Dkt. No. 69. The matter is currently before the court for review of the Report and Recommendation ("Report") of Magistrate Judge Paige J. Gossett, made in accordance with 28 U.S.C. § 636 (b) and Local Rule 73.02(B)(2)(g), D.S.C., filed on June 7, 2013. Dkt. No. 88. The Report recommends that the court grant UCI's motion for summary judgment. *Id.* Thomas filed objections to the Report on July 8, 2013 (Dkt. No. 91), to which UCI replied on July 25, 2013 (Dkt. No. 92). For reasons stated below, the court adopts the Report and grants UCI's motion for summary judgment.

## BACKGROUND

Thomas was employed with UCI from December 2007 through August 2009, as a workers' compensation representative. Part of Thomas's job was to process the incoming mail, and direct it to the appropriate department.

Thomas suffers from scoliosis, which was in remission while she was employed with UCI until June 2009, when she began experiencing back pain. At that time, Thomas approached her supervisor Sharon Jones ("Jones"), explained her history of scoliosis and that she was currently experiencing back pain, and asked for a physician referral. On July 31, 2009, Thomas's back pain worsened and she left work early to see a doctor. Jones was not at work at the time, and Thomas obtained permission to leave early from another supervisor. Thomas also sent an email to Jones explaining she was leaving early. Before Thomas left for the appointment, Jones arrived at the office and stated that she "knew this was going to happen." Jones then sent an email requiring a doctor's excuse from anyone who called in sick when Jones was not in the office, explaining that there had been a pattern of employees calling in sick or leaving early when she was out of the office.

When Thomas returned to work the following Monday, Thomas asked Jones for help with moving storage boxes because of her back. Jones was disgusted or annoyed with Thomas's request. As a result, Thomas arranged for help moving the boxes herself.

At some point following the late-July appointment, Thomas informed Jones that she had a follow-up appointment scheduled three weeks later and that it was likely future appointments would be necessary. Thomas requested a full day's leave for the follow-up appointment and inquired about FMLA leave for future appointments. Jones ignored her question and refused to discuss FMLA leave with Thomas.

On August 21, 2009, Thomas was out on leave for her follow-up appointment. While Thomas was out, Jones searched Thomas's desk and discovered a stack of "stale" mail. The mail was several months old and some pieces had Thomas's handwritten notes on them.[1] When Thomas

---

[1] UCI contends that Jones searched Thomas's desk on August 27, 2009.

returned to work the following Monday, Jones was "cold" to Thomas. On August 28, 2009, Jones informed Thomas that she was terminated because she had stale mail on her desk that had not been researched.

On January 5, 2011, Thomas filed this action. Dkt. No. 1. Thomas alleges she was terminated because of her disability in violation of the ADA and that she was terminated in retaliation for attempting to assert her FMLA rights.[2]

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

---

[2] The Report found that "Thomas appears to have abandoned her ADA claims based on failure to accommodate her disability and retaliation." Report at 6. Thomas did not object to this finding.

**DISCUSSION**

The Report recommends that the court grant summary judgment in favor of UCI because, even assuming that Thomas could establish a *prima facie* case for her ADA discriminatory discharge and FMLA retaliation claims, Thomas has not shown that UCI's stated reason for her termination was pretextual. Report at 6. Thomas contends that "a genuine issue of fact exists as to whether the mail found on [Thomas's] desk had been in her possession as long as [UCI] contends, or whether the mail was even found on her desk at all." Dkt. No. 75 at 26. *See also id.* at 26-27 (suggesting the mail could have "recently been sent to her from other departments" and "Ms. Jones never actually found the mail in question in [Thomas's] desk"). The Report finds that despite Thomas's arguments concerning the stale mail, "nothing in the record tends to show that Thomas's supervisors did not believe that Thomas was at fault." *Id.* The Report, therefore, concludes that "the record does not permit a reasonable inference that UCI's stated reason for terminating Thomas was a pretext for discrimination or retaliation." *Id.* at 8.

In her objections, Thomas contends that "[t]he Magistrate Judge failed to consider how [Thomas]'s evidence that the mail was never actually found on her desk casts doubt on Jones's true motives and whether Jones in fact honestly believed [Thomas] was responsible for the unprocessed mail." Dkt. No. 91 at 6. Thomas relies on contradictory evidence as to who made the decision to terminate Thomas[3] and her interpretation of Jones's reaction to her need to take leave for medical

---

[3] Thomas's immediate supervisor was Jones. Jones's supervisor was Ms. Hardy, and Ms. Moye was the Vice-President of Human Resources. The Report does not identify one decision maker, but rather finds none of the decision makers disbelieved Jones's account of finding stale mail.
   Thomas contends that Jones was the decision maker, not Ms. Hardy or Ms. Moye. Dkt. No. 91 at 3 (citing Dkt. No. 75-13 at 6-7 (Defendant's answers to interrogatories, in which Defendant stated that "Ms. Jones made the decision to terminate Plaintiff, in consultation with Ms. Hardy and Ms. Moye . . .")). Jones stated that she recommended to Ms. Hardy that Thomas be terminated for the stale mail, and that Ms. Hardy approved the termination, thus making Ms. Hardy the final decision maker. Ms. Moye's deposition testimony supports Jones's identification of Ms. Hardy as

4

appointments. Thomas provides theories as to why she should not have been terminated (*i.e.*, there was no way of knowing how long Thomas had the mail in her possession without a date stamp procedure in place) and as to how Jones could have "lied about finding the mail on [Thomas's] desk." Dkt. No. 91 at 6. She also highlights purported inconsistencies in Jones's deposition testimony as to when Jones discovered the mail. Thomas contends that this evidence is enough to survive summary judgment.

Whether the mail was stale due to some negligence of Thomas is not of issue. *See Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279 (4th Cir. 2000) ("[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination."); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (explaining that the court's role is not to reweigh or evaluate the correctness or fairness of personnel decisions). Rather, the court must examine whether the decision makers believed Thomas was responsible for the stale mail. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant."), *overruled on other grounds by National R.R. Passenger*

---

the final decision maker, with Ms. Moye involved in the grievance process. Dkt. No. 69-18 at 3. Ms. Hardy, however, stated in her deposition that Jones started the process, that she approved the termination, and that the decision had to be approved by human resources. Dkt. No. 69-20 at 4. Ms. Hardy, thus, named Ms. Moye as the final decision maker. *Id.* According to Thomas's testimony and a written reprimand notice, Thomas was "terminated effective August 28, 2009." Dkt. No. 75-9 at 4. Thomas also stated that after Jones informed her that she was terminated, she immediately went to speak to Ms. Hardy, who confirmed that Thomas was terminated.

Viewing the facts in the light most favorable to Thomas, Jones recommended that Thomas be terminated, Ms. Hardy approved the termination, and Jones informed Thomas that she was terminated on August 28, 2009. Ms. Moye was not aware of Thomas's termination until August 31, 2009, when she began investigating Thomas's termination after receiving a call from Thomas. Dkt. No. 75-12 at 4.

*Corp. v. Morgan*, 536 U.S. 101, 105 (2002). Thomas does not argue that Ms. Hardy did not believe Thomas was responsible for the stale mail. Thomas, instead, argues that Jones was the "true decision[]maker" and that she did not believe Thomas was responsible for the mail.

Beyond her own assertions, Thomas has offered no evidence that the legitimate, nondiscriminatory reason provided by UCI was pretext for disability discrimination or FMLA retaliation. Thomas has no witnesses to support her theory that Jones lied about finding the mail on her desk. Similarly, Thomas has pointed to no documentary evidence to support her theory. In fact, Thomas's deposition testimony appears to concede that the mail was on her desk. *See* Dkt. No. 69-2 at 37 (Thomas Dep.) (explaining that she told Ms. Moye in a meeting after she was terminated – "I had just got that mail.").[4] The only evidence that Thomas offers is her interpretation of Jones's displeasure with the way she was taking leave for her medical appointments, Jones's failure to answer Thomas's question about whether she qualified for FMLA leave for future, unspecified medical appointments, and an unsupported theory that Jones planted the stale mail in an effort to justify her termination. Without more, Thomas is unable to show pretext. *See Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) (finding unsupported speculation insufficient to create a genuine issue of material fact).

---

[4] During her deposition, Thomas was questioned as to whether she believed the mail had been placed on her desk by Jones:

> Q. Given your relationship with Ms. Jones, do you think there's any possibility that she just would have taken a stack of old mail and just put it on your desk?
>
> A. I'm not sure what transpired with all of this with Sharon [Jones] getting the mail, but she – she was stating there was 32 pieces of mail on my desk. This is what she was stating when I asked her – she couldn't provide those 32 pieces of mail for me.

Dkt. No. 69-2 at 42 (Thomas Dep.). At another point in her deposition, Thomas answered that she "can't say that [the mail] wasn't on [her] desk." *Id.* at 28.

The court rejects Thomas's objections and adopts the Report. For the reasons stated in the Report and above, the court grants UCI's motion for summary judgment.

## CONCLUSION

For the reasons stated above, the court adopts the Report and grants Defendant's motion for summary judgment. Plaintiff's claims are dismissed with prejudice.

**IT IS SO ORDERED.**

s/Cameron McGowan Currie
CAMERON McGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 28, 2013